State ex rel. Gericke vs. The Mayor and Common Council of Ahnapee.

STATE EX REL. GERICKE, Appellant, vs. THE MAYOR AND COMMON COUNCIL OF THE CITY OF AHNAPEE, Respondents.

*March 26 — April 12, 1898.*

Mandamus: *Municipal corporations, duty as to bridges.*

1. When an official act requires the exercise of judgment or discretion on the part of public officers, *mandamus* will not lie to compel performance thereof.
2. Although it is the duty of city officials, under sec. 1223, R. S. 1878, to construct and keep in repair bridges in their respective municipalities, and they have power, under secs. 1318, 1347, R. S. 1878, to levy taxes for that purpose, yet where a city has not sufficient funds in its treasury to repair a bridge, lawfully applicable thereto, and it appears to be a matter of discretion on the part of the city whether to repair the old bridge or to build a new one, *mandamus* will not lie to compel it to repair the old bridge.

APPEAL from a judgment of the circuit court for Kewaunee county: N. S. GILSON, Circuit Judge. *Affirmed.*

The facts of the case are stated in the opinion.

For the appellant there was a brief by *C. M. Scanlan*, attorney, and *V. W. Seely*, of counsel, and oral argument by *C. M. Scanlan.* Among other things, they argued that the grant of power to the city officials to keep the bridge in repair is for the public benefit, and its execution may be insisted on as a public duty. It is not discretionary. *Buswell,*

State ex rel. Gericke vs. The Mayor and Common Council of Ahnapee.

Personal Inj. § 171; *People ex rel. Burke v. Bloomington,* 63 Ill. 207; Lewis, Em. Dom. § 167; *Att'y Gen. v. Bay Co. Bridge Comm'rs,* 73 N. W. Rep. 901; *Comm'rs of Highways v. People ex rel.* 69 Ill. App. 326; Dill. Mun. Corp. §§ 98, 836, note 2; *State ex rel. Cleveland v. Orange,* 31 N. J. Law, 131; *Uniontown v. Comm. ex rel. Veech,* 34 Pa. St. 293; *Howe v. Comm'rs of Crawford Co.* 47 id. 361; *State ex rel. Roundtree v. Board of Comm'rs of Gibson Co.* 80 Ind. 478; *Richards v. Co. Comm'rs of Bristol,* 120 Mass. 401. The city had abundant resources to raise the money. *Carney v. Marseilles,* 136 Ill. 401; *Ivory v. Deerpark,* 116 N. Y. 476; *Eveleigh v. Hounsfield,* 34 Hun, 140; *Hutson v. New York,* 9 N. Y. 163; *Hines v. Lockport,* 50 N. Y. 236.

For the respondents there was a brief by *Cady & Cady,* of counsel, and oral argument by *F. C. Cady.*

CASSODAY, C. J. This is a proceeding by *mandamus,* commenced in September, 1896, to compel the defendants to repair a bridge across the Ahnapee river, within the city. The relation alleges, in effect, the want of repair; the necessity for the bridge; the injury to the relator and others in allowing it to remain out of repair; that it would cost less than $300 to repair the same, and that there was a sufficient amount of money, not otherwise appropriated, in the city treasury, to pay for the necessary repairs of the bridge; and that the defendants had refused, and still refuse, to repair the same, or cause it to be done.

The return consisted of admissions, denials, and counter allegations, and, among other things, alleged, in effect, that at the time of the service of the alternative *mandamus* the entire amount of money in the treasury of the city, for all purposes, was only $826.64; that, of such amount, $540 was raised for the special purpose of paying the semi-annual interest on railroad bonds which the city had previously issued, and was then, and still is, owing, and which interest became

State ex rel. Gericke vs. The Mayor and Common Council of Ahnapee.

due and payable November 1, 1896; also, $125 per month for September, October, and November, 1896, to pay for electric lights, and which payments were required to be made before any more money came into the city treasury, amounting to $375; and for monthly salaries of its officers, which the city was bound to pay, amounting to $150,— making the absolute obligations of the city, in the aggregate, $1,065, thus compelling the city to borrow money for running expenses to the amount of $300, which amount was still due, unpaid, and owing.

The relator replied to such return and took issue with the same.

At the close of the trial the court found, as matters of fact, in effect, that it was and is the duty of the city to keep its streets and bridges in safe and suitable repair; that the relator, a reasonable time before the commencement of this proceeding, requested the defendants to repair the bridge, and a number of the residents and taxpayers petitioned for such repair, but they voted against the same, and refused to make such repair; that if the defendant city had the money in its treasury, not otherwise appropriated, and not, in the reasonable judgment of the defendants, more necessary for other municipal purposes, sufficient for the repair of the bridge, their refusal to make the repair from June 4, 1895, to September 23, 1896, was an unreasonable and unnecessary length of time; that ever since June 4, 1895, the relator had been engaged in the lumber and general merchandise business on the street at the north end of the bridge, and had been the owner of real estate at such place; that while the bridge had been kept in repair he was doing a good business from both sides of the river; that since it became out of repair his trade had fallen off, and his real estate had depreciated in value in consequence of the failure to repair the bridge; that at least one other resident and property owner had been specially injured in his business and property by

reason of the bridge being and remaining out of repair; that the Ahnapee river is a navigable stream for some distance above the bridge, and the draw in the same had theretofore been too narrow for navigation, and so narrow as to prevent the dredges of the United States from passing up and down the river in case it became necessary to do government work above the bridge, and, in case of the improvement of the Ahnapee harbor to a point above the bridge by the United States, it would be necessary to replace the bridge with an entirely new one, of different construction, costing from $1,000 to $1,200; that the actual cost of repairing the bridge so as to make it reasonably safe and convenient for public travel, if hemlock lumber should be used, would be $296, but should the proper city authorities elect to use pine lumber, the cost would be $400; that the common council is authorized by its charter to levy a tax for general purposes not to exceed five mills on the dollar upon the assessed valuation of $410,000; that at the time this proceeding was commenced there was in the treasury of the city, for all purposes, only $826.64, which was in a general fund, but $550 of which was raised for the special purpose of paying semi-annual interest on railroad bonds of the city then and now outstanding, which interest became due and payable November 1, 1896, and before any other money would come into the treasury; that the city was then, and still is, bound by a written contract to pay for lighting the sum of $125 per month, and the payments for September, October, and November, amounting to $375, were required to be made before any money came into the treasury; that the city was also bound by contract to pay its officers certain salaries, aggregating $150; that the total expenditures required for those purposes was $1,065; that the city was compelled to, and did, borrow $300 for its ordinary running expenses; that the money in the treasury was applied by the city authorities

to payment of interest, lights, and salaries, as hereinbefore specified, so far as the same would go; that, in the judgment of the mayor and common council of the city, the best interests of the citizens of the city generally, and of the public, did not require the repair of the bridge, even were there sufficient funds with which to do so.

As conclusions of law the court found, in effect, that the city authorities had the right, in their discretion, to apply the money so in its treasury for the purposes set forth in such findings of fact; that at the time of the service of the alternative writ the city did not have sufficient money in its treasury, properly applicable thereto, to repair the bridge; that the relator was not entitled to a *mandamus* as prayed; that the defendants were entitled to judgment dismissing the relation and alternative writ, with costs.

From the judgment entered accordingly the relator brings this appeal.

The facts found by the court appear to be supported by the evidence. It is undoubtedly true that when administrative officers refuse to perform a mere ministerial duty imposed upon them by law, and which they are thereby bound to perform without further question, then, if they refuse, a *mandamus* may issue to compel them to perform such duty; but, when such official act requires the exercise of judgment or discretion on the part of such officers, then a *mandamus* will not be granted. *State ex rel. Wolff v. Board Sup'rs of Sheboygan Co.* 29 Wis. 84; *State ex rel. Comstock v. Joint School Dist. No. 1,* 65 Wis. 637; *State ex rel. Att'y Gen. v. Cunningham,* 81 Wis. 440, 501; *U. S. ex rel. Dunlap v. Black,* 128 U. S. 40; *U. S. ex rel. Redfield v. Windom,* 137 U. S. 636; *U. S. ex rel. Boynton v. Blaine,* 139 U. S. 306. Undoubtedly, it is the duty of municipalities to construct bridges, and keep the same in suitable repair. R. S. 1878, sec. 1223. But such duty does not deprive the officers of such

municipalities from exercising some judgment or discretion as to the time and manner of making such construction or repairs.

In the case at bar the city authorities were authorized to levy a tax to make such repairs, but not to exceed $300 for any one bridge in any one year. R. S. 1878, secs. 1318, 1347. They certainly were not bound to repair the bridge at their own expense, nor under circumstances which would preclude them from making the city liable for the cost of the work. *State ex rel. Winslow v. Mt. Pleasant,* 16 Wis. 613. To authorize this *mandamus,* the relator was bound to allege and prove that at the time of the service of the writ the city had sufficient funds in its treasury to repair the bridge, and which could be lawfully applied to that purpose, and that there had been unreasonable delay in making such repair. *Orth v. Milwaukee,* 59 Wis. 336, 339. Besides, upon the facts found, it would seem to have been a matter of judgment and discretion on the part of the defendants as to whether they would repair the old bridge or build a new bridge.

*By the Court.*— The judgment of the circuit court is affirmed.